## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| CCS ASSET MANAGEMENT, INC. | ) | Case No. 21-10355-tmd |
| | ) | |
| Debtors. | ) | Chapter 11 |
| | ) | |
| ARLETHA CASH, Independent Executor of the Estate of Selena D. Cash, Deceased, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | Adv. Pro. No. 21-01034-tmd |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY L. SHERIDAN, WILLIAM SHERIDAN, CEAIRA C. SHERIDAN, CCS ASSET MANAGEMENT, INC., JOHN HOBERMAN, and ALMAGEN LLC, | ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### CCS ASSET MANAGEMENT INC.'S REPLY TO PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO RULE 12(C) FOR FAILURE TO STATE A CLAIM

CCS Asset Management, Inc., the debtor and debtor-in-possession in the above captioned bankruptcy case (the "Debtor") and defendant in the above-captioned adversary proceeding (the "Adversary Proceeding"), replies to the Plaintiff's response [Adv. Dkt. No. 43] (the "Response") to the Debtor's motion for judgment on the pleadings [Adv. Dkt. No. 11] (the "Motion") as follows:

### SUMMARY

1.      For all of its flaws, the Response is right about one thing: After two years, three depositions, and four complaints totaling 644 pages, the Debtor *was* on notice of the Plaintiff's allegations and claims against the Debtor. Those are the allegations and claims asserted in the live

Second Amended Petition (the "<u>Complaint</u>"). The issue is that the detailed allegations in the Complaint, taken as true, to not show a plausible claim upon which relief may be granted against the Debtor.

2.      The Response does not seriously contend otherwise. Rather than pointing to allegations in the Complaint sufficient to show a plausible claim against the Debtor or responding to the substance of the Motion, the Plaintiff presents a series of strawmen and non-sequiturs. For example, and most glaringly, the Response does not even attempt to argue that the facts alleged in the Complaint are sufficient to state a claim for recovery against the Debtor under the causes of action for money damages actually asserted in the Complaint (i.e., conversion, breach of fiduciary duties & defalcation, and joint enterprise) or any alternative theory. The Plaintiff just refers to other supposedly "various" causes of action for which the Debtor "may" be liable, without any argument on how the alleged facts, if true, would show that the Debtor is liable to the Plaintiff under these theories. Nor does the Plaintiff respond to the Debtor's arguments that as a matter of law under the facts alleged, 4709 Incorporated could not have suffered a legal harm from any unalleged misrepresentation of the Debtor to 4709 Incorporated because Hoberman had the right to either enforce specific performance of the 4709 Plan or foreclose on liens. And the Response all but admits that the allegations are insufficient under Rule 9(b) of the Federal Rules of Civil Procedure. *See* Response ¶ 13.

3.      The crux of the Response is a request that the Court allow the Plaintiff to amend the Complaint to fix its deficiencies and assert alternative causes of action. But the Plaintiff already had an opportunity and obligation to do that. On August 12, 2021, the Court held a status hearing at which the Plaintiff was required to inform the Court, among other things, if repleading under the Federal Rules of Civil Procedure was necessary. *See* Order Establishing Date for Status

Hearing [Adv. Dkt. No. 5] ("At the status hearing the Court is to be informed of . . . the necessity of repleading under the Federal Rules of Civil Procedure . . . ."). The Motion was filed before the August 12 status hearing. Moreover, the Plaintiff does not indicate what additional factual allegations she would make to remedy the defects of the Complaint. The Plaintiff had the benefit of over a year of reflection and discovery before the live Complaint was filed on January 28, 2021, the status hearing held on August 12, 2021, and the Response was filed on August 31, 2021. The Response does not present any excuse for the Plaintiff's failure to address the issues in the Complaint at those times.

4.      It was the Plaintiff who removed this matter from state court and elected subject herself and the Complaint to the Federal Rules of Civil Procedure. A result of that choice is that the Complaint is subject to Rule 12(c). The Court should give the Plaintiff what she bargained for and decide whether the Complaint—as it is now—states a claim upon which relief can be granted. The Plaintiff must face the consequences of her own decisions.

## ARGUMENT

### A. The Points Raised in the Response are Inapposite or Misrepresent the Debtor's Position.

*i.)      The Relevant Standard is Whether the Allegations in the Complaint Alleges Specific Facts Sufficient to Show a Plausible Claim, Not Fair Notice*

5.      As set out in detail in the Motion, judgment on the pleadings under Rule 12(c) is governed by the same standards applicable to Rule 12(b)(6). *See Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). The Complaint needs to do more than give a vague idea of the kind of claims the Plaintiff is asserting—it needs to state facts that if true would show the Plaintiff is entitled to the relief requested from the Debtor.

6.      The Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), is particularly instructive here. In *Twombly*, class action plaintiffs claimed that incumbent

local exchange carriers (ILECs) conspired to restrain trade in violation of section 1 of the Sherman Act based on allegations of consciously parallel behavior by the ILECs. *Id.* at 551-52. The U.S. District Court for the Southern District of New York granted a motion to dismiss for failure to state a claim on the grounds that allegations of parallel business conduct, taken alone, failed to state a claim under section 1 of the Sherman Act because the ILECs actions could be fully explained by the ILECs protecting their own interests. *Id.* at 552. The U.S. Court of Appeals for the Second Circuit reversed. *Id.* at 553. The U.S. Supreme Court overturned the Second Circuit's ruling because, although the plaintiffs' allegations were "consistent with conspiracy" they were "just as much in line with a wide swath of rational and competitive business strategy unilaterally prompted by common perceptions of the market." *Id.* at 554, 570. A complaint that is not supported by allegations showing—beyond merely consistent with—the elements of a cause of action fails to state a claim. *See id.* at 557. Rule 9(b) requires additional specificity for asserting claims of fraud.

7.      The Response does not even try to address how the Complaint meets this standard. Instead, it repeats the platitude that the Complaint provides fair notice and tries to hold the *Plaintiff's* decision to remove this litigation to this Court against the Debtor. While pleadings may not have been closed in the state court, they became closed after the Debtor's answer in the Adversary Proceeding. The Order Establishing Date for Status Hearing [Adv. Dkt. No. 5] expressly required the Plaintiff to inform the Court of the "necessity of repleading under the Federal Rules of Civil Procedure" at the August 12, 2021, status hearing. The Motion was pending at the time of the status hearing and the Plaintiff is represented by two law firms, at least one of which regularly practices before this Court.

### ii.) *The Debtor's Point with Respect to the Cause of Action belonging to 4709 Incorporated is that the Cameron Road Deed Can Only Be Set Aside for Fraud Against 4709 Incorporated, not Fraud Against Selena Cash.*

8.      The Response indicates that "the Debtor appears to argue that Plaintiff cannot seek to set aside the deed because the grantor was 4709 Incorporated, not Arletha Cash, individually." Response ¶ 6. To the extent there is ambiguity—The Debtor's point is that to grant the relief the Plaintiff requests in the Complaint requires that 4709 Incorporated that was defrauded (not Selena Cash). *See Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex. 1976) ('Without breach of a legal right belonging to the plaintiff no cause of action can accrue to his benefit. A suit to set aside a deed obtained by fraud can only be maintained by the defrauded party."). Thus, the Complaint fails to state a claim unless the well-pleaded factual allegations show (a) a material misrepresentation by the Debtor, (b) that the Debtor knew was false or made recklessly, (c) with the intent for *4709 Incorporated* to rely upon it, (d) on which *4709 Incorporated* actually and justifiably relied, and (e) as a result *4709 Incorporated* suffered injury. Any unalleged inference that Selena Cash reasonably relied on representations in the MFS Agreement to execute the Cameron Road Deed are entirely inapposite to the claims the Plaintiff asserted against the Debtor because 4709 Incorporated would have been in the same position either way. Most of the Complaint is irrelevant with respect to what is asserted against the Debtor.

### iii.) *The Debtor's Point with Respect to the Plaintiff's Claim Being a Quiet Title Action is that the Cause of Action Belongs to 4709 Incorporated, Note Selena Cash's Probate Estate.*

9.      The Response indicates that "[t]he Debtor also apparently seeks judgment on the pleadings of Plaintiff's claim to recover title because it is stated as a declaratory judgment action and not as a claim to quiet title . . . ." Response ¶ 9. To the extent there is ambiguity—The point is that to obtain the relief that the Complaint requests, the Plaintiff must allege facts that meet the requirements of a quiet title action to set aside the Cameron Road Deed. Further, the cause of

action belongs to 4709 Incorporated and thus the relevant alleged facts must show that 4709 Incorporated was defrauded, not Selena Cash.

      *iv.)*   *The Plaintiff Mentions Other Potential Causes of Action but Does Not Describe How the Alleged Facts, If True, Would Show the Plaintiff's Right to Recovery from the Debtor Under Those Causes of Action.*

10.     The Response indicates that "[t]he facts, as pleaded, support various claims against Debtor" and that these "may" include fraudulent transfer, civil conspiracy, and aiding and abetting Sheridan's breach of fiduciary duty. Response ¶ 10. But the Plaintiff makes no argument that the allegations in the Complaint actually show the elements of these potentially asserted causes of action. Even if the Plaintiff was not required to advance the correct legal theory in the Complaint, she must match the facts alleged to a legal theory that would support the relief requested to avoid judgment on the pleadings under Rule 12(c). *See* Local Bankruptcy Rule 7007(b)(1) (requiring responses to contain of the reasons for opposition to the motion and citations of the legal authorities on which the party relies. The Court should not consider the Plaintiff's vague gestures to legal theories she neither asserted in the Complaint nor argued in the Response.

11.     The Response cites *Topchain v. JPMorgan Chase Bank*, 760 F.3d 843 (8th Cir. 2014) and *Quinn-Hunt v. Bennett Enterprises, Inc.*, 122 F. App'x 205 (6th Cir. 2005) in support of the failure of the Complaint to assert a claim that would result in money damages against the Debtor. But both of those cases involved *pro se* plaintiffs, whose pleadings courts are required to liberally construe and hold to a less stringent standard than pleadings drafted by lawyers. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). And neither case supports the Plaintiff's position that the Court should not evaluate the Complaint on the specific causes of action and legal theories asserted in the Complaint.

12.     In *Topchain*, the *pro se* plaintiff filed a complaint without asserting any legal theories. 760 F.3d at 847. The defendant filed a motion to dismiss, which the district court granted.

On appeal, the *pro se* plaintiff argued that his complaint stated claims under breach of contract, fraudulent misrepresentation, negligent misrepresentation, and unjust enrichment. *Id.* at 848. The Eighth Circuit ultimately held that the plaintiff's complaint stated a claim for breach of contract (but not the other causes of action) despite not specifically asserting any legal theory. *Id.* at 854. But the Eighth Circuit limited the scope of its holding:

> Our holding should not be read as imposing any sweeping duty upon district courts to devise legal theories for *pro se* plaintiffs. Rather, a complaint should be found to raise a claim only "if the essence of an allegation is discernable, even though it is not pleaded with legal nicety[.]" Stone, 364 F.3d at 915. Here, the essence of Topchian's breach-of-contract claim was discernable because he attached the Agreement—a contract—to his pleadings and alleged that Chase had not complied with that contract. *See Rabé v. United Air Lines, Inc.*, 636 F.3d 866, 872 (7th Cir. 2011) (recognizing that, where the *pro se* plaintiff had attached her employment contract to her complaint, she had raised "implicit state law claims for breach of contract and/or promissory estoppel[,]" even though her "complaints ha[d] not articulated breach of contract and promissory estoppel theories"); c*f. Coleman v. Correct Care Solutions, 559 Fed.Appx.* 601, 602 (8th Cir. 2014) (per curiam) (holding that the *pro se* plaintiff adequately raised a race-discrimination claim by attaching the EEOC complaint containing race-discrimination allegations to her pleadings).

*Id.* at 854. Further, in distinguishing cases cited by the defendant, the Eighth Circuit expressly noted that those cases were inapposite because *Topchian* involved a *pro se* plaintiff. *Id.* at 849 n.2.

13. *Quinn-Hunt* is similarly off the mark. In that case the *pro se* plaintiff alleged the following in her complaint:

> discharge without cause "because she was an African–American person"; intentional discrimination "for race" through discharge, discipline, and imposition of more severe discipline than imposed against white employees; lower wages "than ... the whites, for comparable work"; discrimination in phone calls allowed; "generally enforced or failed to enforce their Rules, so as to prefer and favor the whites over the blacks"; "racially invidious intent"; and "favoritism for various white employees."

*Id.* at 207. The *pro se* plaintiff did not, however, cite either Title VII or 42 U.S.C. § 1981, both of which provide remedies for race discrimination in private employment. *Id.* The district court refused to construe the complaint as seeking relief under section 1981, which would have prevented judgment as a matter of law for the defendant. *Id.* The Sixth Circuit Court of Appeals reversed. *Id.* Critical to the Sixth Circuit's decision was that "the same set of operative facts leads to claims under both of these statutes . . . ." *See id.*

14.     Here, the Plaintiff here has been represented by three different attorneys and prepared a detailed complaint that specifically asserts various causes of action against particular defendants. The essence of any other asserted cause of action against the Debtor is impossible to discern from the Complaint because they are not made against the Debtor. *Expressio unius est exclusio alterius* should apply to a 76-paragraph complaint that specifically asserts five causes of action against particular defendants and requests that the Court enter seven different declaratory judgments, especially when that complaint that went through four iterations over two years with the benefit of three depositions. The Complaint is not the product of a pro se plaintiff in the early stages of a case and should not be given the same leeway.

15.     Moreover, the Complaint does not actually assert against the Debtor ***any*** claim for which money damages would be appropriate relief. It is not just that the Plaintiff asserted joint enterprise liability against the Debtor where civil conspiracy better fits the alleged facts, the Plaintiff asserted joint enterprise against Anthony Sheridan, William Sheridan, and Hoberman and chose assert a cause of action or legal theory against the Debtor that would entitle her to money judgment. Again, the Plaintiff asks the Court to relieve her of the consequences of her own litigation decisions. The Court should decline that invitation.

     *v.)   The Plaintiff Does Not Address the Lack of Any Fiduciary Duty of the Debtor to the Plaintiff or Other Basis for an Accounting from the Debtor.*

16.     The Response completely ignores the Debtor's argument with respect to accounting and instead just states that accounting is "necessary." Even if so, that does not mean the Plaintiff is required to get an accounting *from the Debtor* as opposed to from some other party that is actually liable to the Plaintiff. The Complaint does not assert a fiduciary duty from the Debtor to Selena Cash for which the Debtor must account nor does the Response assert one exists.

**B.  The Court Should Not Give the Plaintiff a Fifth Shot to Present a Complaint that States a Claim.**

17.     Including Adversary Proceeding No. 19-01064, this lawsuit was first initiated almost two years ago and the Plaintiff has conducted three depositions and filed four complaints. The Complaint is 76 numbered paragraphs long and incorporates hundreds of pages of exhibits either by attachment or reference. Yet even though the action had its genesis in federal court— where the previous iteration of the Complaint garnered a motion to dismiss under Rule 12(b)(6) [Adv. Pro. No. 19-01064, Dkt. No. 35]—the Complaint fails to allege facts sufficient to show the Plaintiff is entitled to the relief she requests.[1] *See* Response ¶ 13. Nor did the Response even bother to identify the additional allegations the Plaintiff proposes to make in her further amended complaint by amending the Complaint to remedy this failure.

18.     Although Rule 9(b) of the Federal Rules of Civil Procedure requires greater specificity for an allegation of fraud than other claims, the standard is not different than what is

---

[1] In the Plaintiff's 2019 adversary proceeding, FDR Management Group, Inc. Johnie R. Tyler, Jr., and Robert Turner filed a motion to dismiss arguing that "there are no specific allegations made against any of the three named Defendants, and they are simply lumped in as "co-conspirators" with no explanation of their actual involvement in the case, and no explanation of how the claims and causes of actions asserted against them have any basis in law or fact." [Adv. Pro. No. 19-01064, Dkt. No. 35, at ¶ 1]. The Court never ruled on this motion because it entered an order under which the case was dismissed for other reasons 11 days later. [Adv. Pro. No. 19-01064, Dkt. No. 48]. It is not the case that the previous iterations of the Complaint were sufficient. It had problems from the beginning that the Plaintiff never managed to correct over two years.

required in Texas courts for fraud. *See Rubalcaba v. Pac./Atl. Crop Exch., Inc.*, 952 S.W.2d 552, 556 (Tex. App.—El Paso 1997) ("[A]ll the elements of fraud and all facts constituting fraud must be properly pleaded to satisfy an allegation of fraud."); *Baines v. Mensing*, 12 S.W. 984, 985 (Tex. 1889) ("The facts constituting the fraud must be alleged."); *Platsas Grp. Holdings, LLC v. Weiser, LLC*, No. CV H-20-1489, 2020 WL 9934406, at *4 (S.D. Tex. Sept. 28, 2020) ("In Texas all the elements of fraud and all facts constituting fraud must be properly pleaded to satisfy an allegation of fraud."). The only difference is that Rule 12(c) of the Federal Rules of Civil Procedure provides a sharper and more durable tool to deal with meritless claims than exists under the Texas state court procedure.

19.     The *Plaintiff* removed this matter to this Court. In doing so, she chose to proceed under the Federal Rules of Civil Procedure. And despite the order setting the August 12, 2021, status hearing before this Court, the Plaintiff chose not to raise that repleading was necessary to comply with those rules despite the Debtor having already filed the Motion, despite having two law firms representing her in this matter. The idea that the Debtor's use of Rule 12(c) is somehow an "unfair procedural advantage" is nonsense. If the Plaintiff wanted to avoid having the sufficiency of the Complaint scrutinized under Rule 12(c), her choice should have been to stay in state court. Actions have consequences.

## CONCLUSION

20.     It is effectively undisputed that the Complaint fails to state a claim against the Debtor on the Grounds asserted therein. At the August 12 status hearing, the Plaintiff had to opportunity to tell the Court that repleading was necessary to comply with the Federal Rules of Civil Procedure. In the Response, the Plaintiff had the opportunity to point to the specific factual allegations in the Complaint that, if true, would show that the Plaintiff was entitled to the relief

requested in the Complaint and address the Debtor's legal arguments. The Plaintiff even had the opportunity to outline the specific additional allegations she would make if allowed to amend the Complaint another time. The Plaintiff did not take advantage of any of these opportunities. The Court should decline to give the Plaintiff yet another opportunity at he expense of the Debtor and its bankruptcy estate. Instead, the Court should grant the Motion and be done with this matter once and for all.[2]

*[Remainder of Page Intentionally Left Blank]*

---

[2] After the claims against the Debtor are resolved, there would no longer be subject matter jurisdiction with this Court. Although the Plaintiff's requested declaratory judgment determining Hoberman's liens involves a substantial federal question, the Plaintiff would clearly lack standing absent setting aside the Cameron Road Deed.

Dated: September 3, 2021                    **PARKINS LEE & RUBIO LLP**

                                            */s/ R. J. Shannon*
                                            R.J. Shannon
                                            TX Bar No. 24108062
                                            Pennzoil Place
                                            700 Milam Street, Suite 1300
                                            Houston, TX 77002
                                            Email: rshannon@parkinslee.com
                                            Phone: 713-715-1660

                                            *Counsel to CCS Asset Management, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2021, the forgoing document was served on the following parties (a) through the Court's CM/ECF System if registered to receive such service and (b) by U.S.P.S. first class mail, postage prepaid and email on the following parties:

Leonard W. Woods
DUGGINS WREN MANN & ROMERO, LLP
600 Congress Avenue, Suite 1900
P. O. Box 1149
Austin, Texas 78767-1149
lwoods@dwmrlaw.com

Anthony Icenogle
ICENOGLE & BOGGINS, PLLC
6907 Capital of Texas Hwy., Suite 220
Austin, Texas 78731
anthony@idenoglefirm.com

Jeffrey S. Kelly
Keith McMahon
Christian A. Davila
THE KELLY LEGAL GROUP, PLLC
P.O. BOX 2125
Austin, Texas 78768-2125
service@kellylegalgroup.com

Kemp W. Gorthey
Kendall L. Bryant
Elizabeth von Kreisler
THE GORTHEY LAW FIRM, PLLC
604 West 12th Street
Austin, Texas 78701
kemp@gortheylaw.com

David Brenner
BURNS ANDERSON JURY & BRENNER, L.L.P.
P. O. Box 26300
Austin, Texas 78755-0300
dbrenner@bajb.com

C. Daniel Roberts
C. DANIEL ROBERTS, P.C.
1602 E. Cesar Chavez
Austin, Texas 78702
droberts@cdrlaw.net

                                            */s/R. J. Shannon*
                                            R. J. Shannon